COMMONWEALTH vs. LAWRENCE LICCIARDI.

Suffolk. September 15, 1982. — December 3, 1982.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Rape. Felony-Murder Rule. Practice, Criminal*, Assistance
of counsel, Verdict. *Constitutional Law*, Assistance of counsel.

The failure of defense counsel at a criminal trial to seek suppression of the
defendant's statement to police, which was in large part exculpatory
and supportive of his subsequent trial testimony, did not show incom-
petence of counsel or harm to the defendant, where counsel's tactical
decision was not manifestly unreasonable and where the record in-
dicated no basis on which the statement could have been suppressed.
[671-672]

A judge's revision of verdict slips following an inquiry by the jury after
several hours' deliberation, so as to require the jury, if they found the
defendant guilty of rape, to indicate whether the offense was commit-
ted against the victim's will or with her consent and, if they found him
guilty of murder in the first degree, to indicate the theory or theories
on which they relied to reach their verdict, neither sought an imper-
missible special verdict from the jury nor unfairly led them to verdicts
of guilty. [672-677]

INDICTMENTS found and returned in the Superior Court
Department on February 6, 1980.

The cases were tried before *Irwin*, J.

*Edward J. McCormick, III* (*Peter Dowd* with him) for
the defendant.

*John A. Kiernan*, Assistant District Attorney, for the
Commonwealth.

WILKINS, J. The defendant was convicted of murder in
the first degree of one Kathleen Boardman. He was also
convicted of kidnapping and of two counts of rape, one
alleging nonconsensual sexual intercourse and the other al-
leging nonconsensual unnatural sexual intercourse. In this
appeal, argued by counsel who was not trial counsel, the

defendant presents two specific issues, neither of which was preserved for appellate review. We consider these issues in the course of our obligation to review the entire case. G. L. c. 278, § 33E. We affirm the convictions and see no basis for ordering a new trial or a reduction in the verdict of murder in the first degree.

The circumstances of the crimes are not significant for the purposes of analyzing the questions before us. Fifteen year old Kathleen Boardman took her dog for a walk in the early evening on November 23, 1979, and never returned home. Her body was found more than two weeks later in a concrete shed. One Michael Amann, who, before the defendant's trial, pleaded guilty to murder in the second degree of Kathleen Boardman, testified for the prosecution. He described the brutal circumstances of the kidnapping, the rapes, and the murder in which he and the defendant participated. The defendant testified that he was with Amann and the victim before the crimes but that they left him and the victim's dog beside some railroad tracks before any crime was committed. He denied any involvement in the crimes.

1. The defendant argues that he was denied the effective assistance of counsel because his counsel did not move to suppress a statement he made to the police. This statement, which was admitted at trial, was exculpatory in large measure. It did, however, place the defendant with the victim and Amann shortly before the killing near where the body was found, and it placed the defendant with Amann immediately after the killing. Moreover, as the prosecutor pointed out on cross-examination, the statement was not entirely consistent with the defendant's trial testimony.

Defense counsel did not move to suppress the statement before trial nor when it was offered in evidence at trial. The trial judge appropriately raised the question whether defense counsel was making a tactical choice not to object to the admission of the statement. Counsel said that he was making such a choice. The judge, nevertheless, conducted a voir dire on his own motion, after which defense counsel

adhered to his decision not to object to the admission of the statement. The statement was thus admitted without objection.

If we were to deal with this question of the ineffective assistance of counsel only in terms of whether, under G. L. c. 278, § 33E, there was a substantial likelihood of a miscarriage of justice, we would find no such likelihood. Moreover, even applying the standard for testing the ineffectiveness of counsel (*Commonwealth* v. *Saferian*, 366 Mass. 89, 96 [1974]), the record does not show incompetence ("behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer") nor does it show, in any event, that the defendant was harmed (because the attorney's conduct "deprived the defendant of an otherwise available, substantial ground of defence").

Although the conclusion that defense counsel's action was a tactical choice does not immunize that choice from judicial scrutiny (*Commonwealth* v. *Adams*, 374 Mass. 722, 728-729 [1978]), counsel's decision was not "manifestly unreasonable." The defendant's statement, which exculpated him from participation in the crimes, largely supported his subsequent trial testimony.

Moreover, this record simply fails to present any basis on which the statement could have been suppressed. The defendant voluntarily came to the police station with his mother and a girlfriend, gave the statement, and then left. There was no custodial interrogation and, therefore, Miranda warnings were not required. *Commonwealth* v. *Sheppard*, *ante* 488, 499 (1982). Nor is there anywhere in the record evidence that suggests that the statement was involuntary (see *Commonwealth* v. *Walden*, 380 Mass. 724, 730 [1980]), and thus no charge on voluntariness was required (see *Commonwealth* v. *Alicea*, 376 Mass. 506, 523 [1978]). Counsel is not obliged to raise issues lacking any potential for success.

2. We find no error in the revision of the verdict slips. The judge charged the jury on the basis of both murder in the first degree and murder in the second degree. He in-

structed them that they could find murder in the first degree on any one or more of three theories — deliberate premeditation with malice aforethought, felony-murder, or extreme atrocity or cruelty. The charge on felony-murder as murder in the first degree was properly based only on the charges of rape and not kidnapping.[1] On the indictments for natural and unnatural rape, the judge initially gave the jury the option of returning verdicts of guilty or not guilty. He did not charge that, because the victim was under sixteen years of age, if they found she consented to sexual intercourse, they could return a verdict of guilty of statutory rape, a lesser included offense within the rape indictments (see *Commonwealth* v. *Franks*, 365 Mass. 74, 79-80 [1974]). It is unclear from a colloquy at the bench whether defense counsel wanted such a charge.

After the jury had deliberated for a few hours, they returned with a question: "Is it considered to be rape if intercourse takes place with a child under the age of sixteen regardless of whether the child does consent or not consent[?]" The judge held a lobby conference with counsel to discuss his answer, which he concluded should be an affirmative one. But the distinction between forcible rape and statutory rape presented a problem as to felony-murder. The judge noted that a life sentence could be imposed for conviction of statutory rape (G. L. c. 265, § 23) and that, construing G. L. c. 265, § 1, strictly ("in the commission or attempted commission of a crime punishable with death or imprisonment for life"), perhaps a conviction of murder in the first degree could be based on a conviction for statutory rape. He observed, however, that there was no case author-

---

[1] At the time of these crimes, a sentence of life imprisonment was authorized for both forcible and statutory rape. See G. L. c. 265, § 22, as appearing in St. 1974, c. 474, § 1; c. 265, § 22A, as appearing in St. 1974, c. 474, § 2; and c. 265, § 23, as appearing in St. 1974, c. 474, § 3. General Laws c. 265, § 1, provides that a crime punishable with life imprisonment can be the basis of a conviction of felony-murder in the first degree. Kidnapping of the character involved in this case, however, carried a maximum sentence of ten years (G. L. c. 265, § 26) and hence could not have supported a conviction of murder in the first degree.

ity for a first degree felony-murder conviction based on statutory rape. He commented that, as a practical matter, it seemed unlikely that death could occur during consensual intercourse so as to warrant a felony-murder conviction.[2]

The judge decided to change the verdict slips on the rape indictments to require the jury to indicate whether, if they found the defendant guilty, the crime was committed against the victim's will or with her consent. The option of finding the defendant guilty of statutory rape should have been given the jury initially. See *Commonwealth* v. *Franks*, 365 Mass. 74, 80 (1974). Certainly, the defendant cannot reasonably complain about that change, as it did not harm him and was legally correct.[3]

The judge decided further to instruct the jury that, if they found the defendant guilty of murder in the first degree, they should indicate on a revised verdict slip which theory or theories they relied on in arriving at their general verdict. The general verdict of guilty of murder in the first degree would not have disclosed whether the jury relied only on felony-murder to reach its verdict.

The judge instructed the jury concerning the verdict slips, revised as to both the murder indictment and the rape indictments. Defense counsel did object to the instructions to the extent that the jury were permitted to return a verdict of guilty of murder in the first degree based on the felony of statutory rape. He did not, however, object to the revision

---

[2] The judge's concern whether the felony of "statutory rape" could be the basis for a felony-murder conviction was well justified in light of what this court has since said in *Commonwealth* v. *Moran, ante* 644, 650-651 (1982), and *Commonwealth* v. *Matchett*, 386 Mass. 492, 507-508 (1982).

[3] The defendant may have been benefited by the change because the jury were given the option of finding him guilty of the lesser offense of statutory rape. Although forcible rape and statutory rape both carried a life sentence as the maximum penalty, the sentence likely to be imposed for statutory rape would tend to be less severe than a sentence for forcible rape. Of course, the defendant was not benefited in one sense because the change in the instructions eliminated an appellate issue as to the adequacy of the initial charge.

of the verdict slips. The jury found the defendant guilty of kidnapping, of both charges of forcible rape, and of murder in the first degree based both on extreme atrocity or cruelty and on felony-murder, but not on deliberate premeditation.

The defendant argues that the revision of the verdict slips was unlawful. He contends that the questions presented by the verdict slips constituted an impermissible special verdict and that, even if the questions did not call for a special verdict, the asking of special questions unconstitutionally denied him a trial by a fair and impartial jury and denied him due process of law. We conclude that the verdict slips did not seek a special verdict from the jury and that the special questions did not deny a fair trial in violation of his constitutional rights.

We start with a definition of the relevant terms. A "special verdict" involves no determinative, ultimate verdict from a jury but only a statement of facts the jury have found from which the judge determines the appropriate judgment. See Black's Law Dictionary 1399 (5th ed. 1979). "Special questions" involve a general verdict from the jury coupled with an answer or answers to written interrogatories on one or more issues of fact, the decision of which is essential to the verdict. The Massachusetts Rules of Civil Procedure recognize this distinction. Mass. R. Civ. P. 49, 365 Mass. 812 (1974). Under the Massachusetts Rules of Criminal Procedure, a judge may submit special questions to the jury. Mass. R. Crim. P. 27 (c), 378 Mass. 897 (1979). There is, however, no provision in the rules of criminal procedure for a "special verdict." The Reporters' notes state that those rules eliminated the "special verdict." See Reporters' Notes to Mass. R. Crim. P. 27, Mass. Ann. Laws, Rules of Criminal Procedure at 444 (1979). This conclusion is supported by legislative action which paralleled this court's adoption of those rules. Effective July 1, 1979 (see St. 1979, c. 344, § 51) (the effective date of the rules of criminal procedure), G. L. c. 278, § 11, as amended then through St. 1964, c. 108, § 2, which had permitted special verdicts, was amended to eliminate any reference to special verdicts. G. L. c. 278, § 11, as appearing in St. 1979, c. 344, § 43A.

From what we have said, it is apparent that the judge did not seek a "special verdict" from the jury. They were permitted to reach a general verdict on the charge of murder in the first degree. The question remains whether the defendant's constitutional rights were denied by the use of special questions. We see no significant difference, in assessing the defendant's argument, between the defendant's right to a trial before an impartial jury and his right to a fair trial as a matter of due process. The claim is that the judge unfairly led the jury to their verdicts. Because the defendant did not object to the revision of the verdict slips and the accompanying instructions so as to preserve this issue for appellate review, we consider the issue by the standard, under G. L. c. 278, § 33E, whether there is a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Tavares,* 385 Mass. 140, 148 (1982).

There are instances in which special questions in a criminal case will aid in the disposition of a case. See *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188, 299-300 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts,* 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U.S. 914 (1972); *Heald* v. *Mullaney,* 505 F.2d 1241, 1245 (1st Cir. 1974), cert. denied, 420 U.S. 955 (1975). The questions and the manner in which they are presented, however, must avoid any "tendency to lead the jurors step by step to a verdict of guilty. See *United States* v. *Spock,* 416 F.2d 165, 182 (1st Cir. 1969)." *Commonwealth* v. *Golston,* 373 Mass. 249, 260-261 (1977), cert. denied, 434 U.S. 1039 (1978).

The verdict slips as revised were not unfair to the defendant. As to the rape indictments, we have already noted that the changes in the verdict slips were legally correct and did not harm the defendant. The revised verdict slips did not tend to lead the jury to guilty verdicts on the rape indictments. The use of three subheadings on the verdict slip for the murder indictment also did not tend to lead the jury down the path to a guilty verdict. The changes appropriately responded to the proper administration of justice by

clarifying the issues for any appeal and by eliminating the necessity of a new trial because of an ambiguous jury verdict. The changes made it possible to determine whether, if the jury found the defendant guilty of murder in the first degree based solely on the doctrine of felony-murder, the felony was statutory rape. The judge instructed the jury to determine first whether the defendant was guilty of murder in the first degree, and, only if they did, to determine the ground or grounds for that conclusion. Because the jury had to arrive unanimously not only on a verdict of guilty but also on the ground or grounds for that verdict, the questions may in fact have tended to influence the jury away from a guilty verdict. We see no error in the use of a verdict slip of the character presented to the jury, and certainly we discern no substantial likelihood of a miscarriage of justice in the use of the verdict slip.[4]

3. We see no basis for ordering a new trial or for reducing the verdicts pursuant to our duty under G. L. c. 278, § 33E.

*Judgments affirmed.*

---

[4] The use of a verdict slip in the form ultimately presented to the jury may be justified on the ground that, without such answers, a judge would be barred from imposing consecutive sentences for conviction of both murder in the first degree and any felony which may have been the basis of that murder conviction. See *Shabazz* v. *Commonwealth, ante* 291, 294 (1982). If a jury find and state that a defendant is guilty of murder in the first degree on the ground of deliberate premeditation or on the ground of extreme atrocity or cruelty (or on both grounds), the fact that there was a guilty finding on a felony charge which might have warranted, and perhaps resulted in, a finding of guilty of murder in the first degree, based on the felony-murder doctrine, would not foreclose consecutive sentences, at least on traditional theories. See *id.*; *Commonwealth* v. *Wilson,* 381 Mass. 90, 123 (1980).

Although the issue raised here was not the focus of the defendant's objection, a verdict slip with three subheadings for murder in the first degree was used in *Commonwealth* v. *Chubbuck,* 384 Mass. 746, 754 (1981). This court said that "[t]here was no error in the verdict slip . . . ." *Id.*

The question of consecutive sentences is not before us because the defendant in this case received a life sentence for murder, two concurrent life sentences for rape, and a concurrent sentence (from nine to ten years) for kidnapping.