COMMONWEALTH *vs.* SHANNON EWING.

No. 90-P-690.

Essex. December 11, 1990. - March 22, 1991.

Present: PERRETTA, KAPLAN, & GILLERMAN, JJ.

*Arrest. Constitutional Law*, Arrest, Admissions and confessions, Waiver of constitutional rights. *Evidence*, Admissions and confessions. *Homicide. Practice, Criminal*, Required finding, Instructions to jury, Reasonable doubt. *Malice. Intoxication.*

A certain statement to police officers by a defendant later charged with murder was not rendered inadmissible on the basis that, after initially waiving his right to remain silent and making a statement to the police, his refusal to reply to a particular question constituted a reassertion of his right to remain silent, and that the failure of the police to stop interrogation required suppression of the statement, where the defendant expressed neither an unwillingness to continue nor an affirmative request for an attorney. [286-287]

At a murder trial, there was sufficient evidence, viewed in the light most favorable to the Commonwealth, for the jury to conclude, beyond any reasonable doubt, that the defendant acted with malice. [287-289]

At a murder trial, there was no error in the judge's charge to the jury on reasonable doubt. [289-290]

Although the defendant at the trial of a murder case testified that he had been drinking beer with the victim, the judge correctly refused the defendant's request for an instruction to the jury that they might take into account evidence of the defendant's intoxication in determining whether he acted with malice, where there was no indication that the defendant was intoxicated or that the beer had any effect on his state of mind at the time of the crime. [290-291]

At a murder trial, the judge's instructions to the jury were adequate with respect to manslaughter, including his instructions pertaining to the meaning of "heat of passion" and "provocation." [291-293]

INDICTMENT found and returned in the Superior Court Department on September 28, 1988.

A motion to suppress was heard by *John T. Ronan*, J., and the case was tried before him.

*Willie J. Davis* for the defendant.

Commonwealth *v.* Ewing.

*Robert J. Bender*, Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. On Saturday, August 13, 1988, Americo Scarelli (the victim) was found dead in his office at the Department of Public Works, 1023 Riverside Drive in Methuen. One month later, an Essex County grand jury returned an indictment charging the defendant with murder. A motion to suppress the defendant's inculpatory statements to the police was denied after an evidentiary hearing, and on April 14, 1989, after a five-day trial, a jury returned a verdict of guilty of murder in the second degree. The defendant appealed, claiming errors in the suppression ruling and in the conduct of the trial. We affirm the judgment.

1. *Motion to suppress.* The defendant was arrested on August 18, 1988, in New Jersey as a result of an automobile accident in which he was involved. While the defendant was being held by the Newark police, Detective Conte read aloud the full Miranda warnings from the police department Miranda warning form, and then the defendant read aloud the portion which stated, "Anything you say can be used against you in a court of law." The waiver paragraph at the bottom of the form was next read to the defendant, and he was asked to read the waiver to himself. The defendant signed the waiver, agreed to answer questions, and proceeded to give a detailed statement of the circumstances of the victim's death.

The defendant admitted to a homosexual encounter with the victim, in the course of which the defendant stabbed the victim with the defendant's knife and stuck him with a sharp object he found on a nearby sink. On appeal (but not at the suppression hearing) the defendant argues that the statement should be suppressed because at one point in the interrogation the following exchange occurred:

"Q. Shannon, you stated earlier that this man had grabbed your leg, is that all that happened?

"A. No.

"Q. Did any sexual act occur between you and him in that [building]?

"A. Yes, but I don't want to discuss it."

The questioning then was directed to another subject, and it continued to completion without objection or interruption. At the conclusion of the statement the defendant was asked, "Why have you given this statement?" The defendant answered, "Because I couldn't live without paying for what I did and eventually I would have got caught."

The defendant argues that because of his refusal to answer the single question just quoted, the interrogation should have ceased. There is no merit to the argument; the defendant's rights were not violated. He had decided, for whatever reason, not to answer a particular question, but he did not indicate in any manner that he was invoking the right he had previously waived — his right to remain silent. The outcome, adverse to the defendant, is controlled by *Commonwealth v. Roberts*, 407 Mass. 731, 734 (1990), where the court said, "For the rule of *Miranda* regarding the termination of questioning to apply, there must be either an *expressed* unwillingness to continue or an affirmative request for an attorney," quoting (with emphasis added) from *Commonwealth v. Pennellatore*, 392 Mass. 382, 387 (1984). Neither one occurred here. Contrast *Commonwealth v. Taylor*, 374 Mass. 426, 428-430 (1978).

2. *Motion for a required finding of not guilty of murder.* At the close of the Commonwealth's case, which included the statement the defendant gave to the New Jersey police, the defendant moved for a required finding of not guilty of so much of the indictment as charged murder. The defendant's argument is that the motion should have been allowed because the evidence showed that "the killing, while intentional, was without malice . . . ." The issue, then, is whether at the close of the Commonwealth's case there was sufficient evidence, viewed in the light most favorable to the Commonwealth, for the jury to conclude, beyond any reasonable doubt, that the defendant acted with malice. See *Commonwealth v. Latimore*, 378 Mass. 671, 676-678 (1979).

The thrust of the motion is that the defendant's statement to the police in New Jersey establishes no more than that the

defendant acted in self-defense. However, the jury were "entitled to disbelieve the evidence that the defendant acted in self-defense." *Commonwealth* v. *Lamrini*, 392 Mass. 427, 431 (1984), quoting from *Commonwealth* v. *Fluker*, 377 Mass. 123, 128 (1979). Disbelieving that portion of the statement, the jury could easily conclude on the basis of the remainder of the statement and other evidence that the defendant, beyond a reasonable doubt, acted with malice.

Joanne Richmond, a physician, forensic pathologist, and medical examiner for the Commonwealth of Massachusetts, had performed an autopsy on the body of the victim; she testified at the trial that the cause of death was a massive hemorrhage due to stab wounds and puncture wounds, primarily a stab wound in the neck. Dr. Richmond described bruises on the victim's left cheek, around the left eye, and on the left side of the neck. On the right cheek there were two puncture wounds, one of which went to a depth of two inches. On the right side of the neck there was a stab wound that penetrated one and a half to two and a half inches. On the right upper chest there were two sets, or pairs, of puncture wounds. On the left chest there was a stab wound that had passed through the sternum bone "with a great deal of force" and "raised the sac around the heart" without entering the heart. This wound was two to three inches deep. The puncture wounds were caused by a two-pronged instrument; a carving fork was found near the victim. The stab wound was caused by a knife. The victim probably survived for twenty or thirty minutes after receiving the stab and puncture wounds; "there was almost no blood left in the body," Dr. Richmond testified. The victim, according to Dr. Richmond, was sixty-five years old, height 5'7", weight 170 pounds.

The circumstances described in the defendant's own statement to the police certainly did not require any measure of self-defense. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211-212 (1966). The defendant, who had never previously met the victim, was picked up by him on a public street and voluntarily went with him to the victim's office, where the victim indicated he was interested in a homosexual en-

counter. When rebuffed, the victim swore at the defendant. At that point the defendant simply could have walked away; there is nothing in his statement that suggests there was any obstacle to his doing so. When the victim, in spite of the rebuff, took off his pants and shirt, the defendant admitted that he responded by taking out his knife and thrusting it forward and deeply into the victim's neck. This was followed by blows about the head, a stab wound that almost entered the heart, and several puncture wounds caused by a carving fork. Then, having taken the keys to the victim's car from his pants pocket, the defendant fled the Commonwealth in the victim's car.

Moreover, "[t]here is no constitutional principle which bars the conviction of a defendant when there is evidence warranting an inference of malice and also evidence warranting, but not requiring, a finding that the defendant acted in self-defense." *Commonwealth* v. *Lamrini*, 392 Mass. at 431.

The defendant relies on *Commonwealth* v. *Johnson*, 3 Mass. App. Ct. 226 (1975). That was a case, however, in which the victim initiated sudden combat and which involved "highly unusual circumstances," *id.* at 231; it has no bearing on the substantially different facts of this case. Compare *id.* at 233.

There was no error in the denial of the motion.

3. *Instructions on reasonable doubt.* The defendant objected to the charge on reasonable doubt. His argument is that the judge (who eschewed, inexplicably, the "time-tested language of *Commonwealth* v. *Webster*, 5 Cush. 295, 320 [1850]," see *Commonwealth* v. *Wood*, 380 Mass. 545, 551 [1980]) erroneously instructed the jurors "that they may convict upon a moral certainty without more."

There was no error in the judge's charge on reasonable doubt.[1] He gave the instruction, "Proof beyond a reasonable

---

[1]The judge's entire charge on reasonable doubt was the following:
"Well, what is proof beyond a reasonable doubt? It's a weight, a measure; it's a quantum of proof from the evidence, if there is any evidence that you find credible, believable. Such a measure that convinces you and causes you to form and to hold a strong conviction that from this credible evidence you are satisfied, and that you have within you a strong and a

doubt is proof to a moral certitude," but that, the Supreme Judicial Court has said, "is the heart of the matter," *Commonwealth* v. *Therrien*, 371 Mass. 203, 207 (1976), for it conveys the high degree of probability that is required for conviction. *Webster*, too, uses the same phrase: "the evidence must establish the truth of the fact to a reasonable and *moral certainty* . . ." (emphasis supplied). *Commonwealth* v. *Webster*, 5 Cush. at 320. The reference in *Webster* to "reasonable . . . certainty" is meant to convey the idea, for the benefit of the Commonwealth, not the defendant, that "absolute certainty" of guilt is not required, *ibid.*, and the absence of that idea was, if anything, a benefit to the defendant. Moreover, the judge told the jury that "if, when all is said and done there remain[s] in the mind of this jury a reasonable doubt from the evidence, then the law is clear, Shannon Ewing shall have the benefit of this doubt." Contrast a charge which instructs the jury to convict in the absence of a "*doubt* which amounts to a moral certainty" (emphasis added). See *Commonwealth* v. *Wood*, 380 Mass. at 548.

4. *The instruction on malice and intoxication.* The defendant objected to the refusal of the judge to give the following instruction: "I have told you that one of the elements of the offense of murder which the Commonwealth must prove beyond a reasonable doubt is that the defendant acted with malice; that he specifically intended to kill. The defendant cannot be guilty of murder without that malice and specific

---

settled belief, such a strong and settled conviction that you may be said to be morally certain.

"Proof beyond a reasonable doubt is proof to a moral certitude. Now it isn't proof beyond all possibility of innocence. Proof beyond a reasonable doubt isn't proof to a philosophical absolute or a mathematical certitude. But it is such a measure of proof that from the evidence, a juror says to him or herself from the evidence that I give credence to, I have within me now a firm and a settled conviction of this man's guilt, such a firm and settled conviction that I may be said to be morally certain. For the law also is, if when all is said and done there remain in the mind of this jury a reasonable doubt from the evidence, then the law is clear, Shannon Ewing shall have the benefit of this doubt. By your oath says, if he be guilty you shall find him guilty. If he be not guilty you shall find him not guilty and no more."

intent. When you consider whether or not the Commonwealth has proved that the defendant acted with malice and had the necessary intent, you may take into account the evidence of intoxication."

The judge was correct in refusing the requested instruction; there was no evidence of intoxication.[2] The defendant testified that he had been drinking beer with the victim, but the record is barren of any evidence that the defendant was intoxicated or that the beer had any effect on his state of mind. See *Commonwealth* v. *Moore*, 408 Mass. 117, 134-135 (1990); *Commonwealth* v. *Freiberg*, 405 Mass. 282, 287 (1989).

5. *The instructions on manslaughter.* The defendant requested detailed instructions on the meaning of "heat of passion" and "provocation."[3] See *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980). The judge's instructions on these terms, which we set out in the margin,[4] were adequate.

---

[2]The judge's instruction that the defendant's alleged intoxication could be considered in connection with deliberate premeditation was more favorable to the defendant than was required by the evidence.

[3]Involuntary manslaughter was not an issue at the trial and is not an issue on appeal.

[4]The judge charged the jury as follows:

"More specifically, what it is, manslaughter is the killing from a sudden transport of passion or heat of blood, upon some reasonable provocation and without malice. Or the taking of another's life occasioned by sudden combat; taking of another's life in the heat of passion occasioned by some sudden provocation. The malice aforethought is the distinctive element of murder, and it is explicitly excluded from manslaughter. If upon sudden provocation in the heat of passion, and I'll talk about that very shortly, if that is present, then malice aforethought is necessarily absent. And the killing is not murder.

". . . .

"Heat of passion or sudden provocation. What is sudden provocation? Well, first, words. You can't be insulted; you cannot be insulted by words alone. Sudden provocation is, does not include words alone. No matter how insulted you might be, the law says that is not sufficient provocation to dethrone reason. Because you see, in the heat of passion that is what happens, that reason gets dethroned. You're not, for the moment there, you're not, you're not with the ability to reflect rationally.

"Manslaughter is the unlawful taking of a life without malice aforethought, but it may be committed with real purpose and design where the cause is mitigated, because the design or purpose is suddenly formed and

The defendant's trial testimony — unlike his statement to the New Jersey police[5] — described the victim's act of fellatio upon the defendant. When the defendant resisted further advances, the victim positioned himself "near the door," the defendant thereupon punched the victim, and a fistfight ensued, during the course of which the defendant drew out a knife from his back pocket and thrust it into the defendant's neck and chest.

On the defendant's own statements to the New Jersey police and on his testimony at the trial, an instruction on manslaughter was certainly favorable to the defendant, see *Commonwealth* v. *Corriveau*, 396 Mass. 319, 340-341 (1985), and the judge's description of voluntary manslaughter was not defective or inadequate. Compare *Commonwealth* v. *Weaver*, 395 Mass. 307, 312 (1985). The judge did not have to give illustrations of acts that might constitute provocation, nor was he required to adopt the defendant's requested charges, however nicely phrased. *Ibid*. There was no error.

The defendant's argument that the judge's instructions on the voluntariness of the defendant's statement to the police in New Jersey were insufficient has no merit; the instructions were more expansive and detailed than the defendant's re-

it's in the heat of mutual combat or through the violence of sudden passion that·was itself the subject of strong provocation.

"So, you have to look at the circumstances of this case. If the Commonwealth says murder, it must show it isn't manslaughter, any evidence of provocation. And the evidence of words alone is never enough. Any evidence of such provocation that would cause the heat of blood to raise up and rationality and reason be dethroned. The difference is the state of mind of the actor. . . .

"See, taking of another's life, with what the law calls malice aforethought is murder. Taking of another's life intentionally if one is provoked by something other than words, by actions, and so provoked that by combat, that the hot blood rises, heat of passion is what the law calls it. Reason dethroned; then the law makes allowance for that human frailty, and that killing is manslaughter. It's for you to say."

[5]The defendant's statement to the New Jersey police did not include a description of a fistfight or of the act of fellatio. The statement describes the defendant as resisting the victim's homosexual advances and says that the victim, after yelling at the defendant for "leading him on," ·proceeded to take off his clothes notwithstanding the defendant's rebuff and that the defendant then drew out his knife and thrust it into the victim's neck.

quests numbered thirty-six and thirty-nine which were the basis of the objection. See Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). In any event, the judge's instructions were adequate. See *Commonwealth* v. *Williams*, 388 Mass. 846, 856-857 (1983).

The defendant's remaining arguments are presented here for the first time, with the claim that certain alleged errors, to which the defendant did not object, created a substantial risk of a miscarriage of justice. After a careful review of the record, we conclude that there was no error. Further discussion is not warranted.

*Judgment affirmed.*