# RESCRIPT OPINIONS.

COMMONWEALTH *vs.* PAUL A. ALMEIDA. No. 91-P-671. January 20, 1993. *Witness*, Expert, Redirect examination. *Evidence*, Expert opinion, Verbal completeness. *Identification. Practice, Criminal*, Argument by prosecutor.

Of six points on appeal, the principal one which the defendant Almeida urges is that a special agent of the Federal Bureau of Investigation (FBI), testifying as an expert in photographic analysis, was improperly permitted to speak to an ultimate conclusion that should have been left exclusively to the jury. We think the disputed testimony was rightly received and affirm the judgment of conviction on an indictment for armed robbery while masked (G. L. c. 265, § 17). As to the other five issues, we shall comment briefly.

There had been an armed robbery of a BayBank branch office in New Bedford by two masked men on August 27, 1987. On the strength of descriptions by three bank tellers, a photographic identification by one of them, and information about a car used in connection with the robbery, a New Bedford police detective armed himself with a search warrant, searched the home of the defendant and seized, among other items, a blue denim jacket, with a hole in the left sleeve just above the cuff.

1. *Admission of expert opinion on a matter approaching the "ultimate question."* The pertinence of that garment, in addition to its similarity to the jacket which percipient witnesses described as having been worn by one of the robbers, was that a surveillance camera had recorded the bank holdup on film.[1] It was, thus, possible to compare characteristics of the jacket seized by the police with those of the denim jacket which appeared on film.

Joseph Avignone, an FBI photograph analyst, appeared as a witness for the prosecution. He explained how he had become trained to observe fabric characteristics for purposes of comparing pictures of clothing with the items thought to be the subject of the photographs. For purposes of his analysis, Avignone posed the denim jacket seized from the defendant in positions similar to those depicted in the film and made photographs which he could compare with those made by the surveillance camera. In this instance, Avignone identified as common to both photographs three dark wear spots, three light wear spots on the seams, a pocket that was worn

---

[1] The camera takes a picture every fifteen seconds during bank hours.

and one that was not and, particularly, a hole in the sleeve of the jacket in the same location slightly to the right of the cuff. The shape of the hole was the same in each picture. Avignone also called to attention stains, bleach marks, creases, and stitching as points of identification.

After Avignone had been permitted to describe his methods, with special reference to the surveillance photograph and the photographs of the jacket, the prosecutor asked him whether, on the basis of his comparison and analysis, he had formed "an opinion or reach[ed] any conclusion as far as that jacket and its relation to . . . the jacket depicted in that bank robbery photograph?" Defense counsel objected on the ground that the question called for an ultimate finding which the jurors could reach on the basis of their common understanding.[2] Following a colloquy with counsel, the judge allowed the question. Avignone, after appropriate preliminary questions, testified that, "It is my opinion that Government's Exhibit No. 7 is the jacket that is depicted in the bank robbery films."

Immediately after Avignone's answer, the judge instructed the jury about the role played by the opinions of experts in the trial of cases and that the jury could accept or reject expert opinion and arrive at their own conclusion. Again in his charge to the jury, the judge said that they were free to accept, accept in part, or reject entirely the expert testimony.

The defendant's argument is that the tying of his jacket to the surveillance photograph approached the ultimate identification question which the jury were required to decide, namely, Was the defendant the bank robber? What is referred to as the "ultimate issue rule," barring an expert from giving an opinion on a subject approaching the ultimate issue in the case, lest the jury bow too readily to the opinion of an expert, see McCormick, Evidence § 12, at 48 (4th ed. 1992), has a long history of erosion in Massachusetts. See *Commonwelth* v. *LaCorte*, 373 Mass. 700, 705 (1977), and cases there cited. The *LaCorte* case dealt with fingerprints, i.e., a fingerprint expert was permitted to testify that the fingerprints of the accused matched those found on a cup at the scene of a killing.

Functionally, the fingerprint expert and the photograph-fabrics expert are rendering the same sort of help to the jury. Decisions following the *LaCorte* opinion, such as *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982), and *Commonwealth* v. *Dockham*, 405 Mass. 618, 628 (1989), have restated that testimony "on matters within the witness's field of expertise is admissible whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide." *Simon* v. *Solomon*, 385 Mass. at 105. Massachusetts decisional law reflects Proposed Mass. R. Evid. 704: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces

---

[2]Although counsel did not intone the word "objection" or the words "I object," what he said in addressing the court at sidebar strikes us as sufficient to have informed the trial judge that defense counsel thought the question should be excluded.

an ultimate issue to be decided by the trier of fact." See Liacos, Massachusetts Evidence 122-123 (5th ed. 1981). Avignone's testimony about the identity of the jacket with the surveillance photograph was correctly received.

2. *Unreliable photographic identification.* Although the defendant Almeida complains on appeal about the unreliability of a photographic identification made by one of the three bank tellers, Sheila Shurtleff, no point of this was made at trial. The issue, therefore, is lost. *Commonwealth* v. *Young,* 401 Mass. 390, 404 (1987). Smith, Criminal Practice & Procedure § 1779 (2d ed. 1983). It is perhaps more dispositive that the prosecution put no questions to Shurtleff during her direct examination about her selection of a picture of Almeida from a photographic array. That Shurtleff had made identifications from arrays displayed by the police was brought out by defense counsel on his cross-examination of Shurtleff. Defense counsel touched on this subject for the purpose of probing Shurtleff's capacities as an observer.[3] The defense cannot now complain that evidence of the very photographic identification that it called to attention was erroneously received.

3. *Allowing police detective to testify about photographic identification.* While cross-examining Steven Oliveira, a detective who had investigated the bank robbery, defense counsel brought out that Shurtleff had on October 20, 1987, picked from arrays of photographs a picture of a person other than the defendant. On redirect examination, the prosecutor brought out that on January 9, 1988, Oliveira again had shown a series of photographs to Shurtleff and on that latter occasion she selected a picture of the defendant. This was permissible rehabilitative examination which defense counsel at trial neither objected to nor moved to strike. The strictures of *Commonwealth* v. *Daye,* 393 Mass. 55, 61-65 (1984), are not implicated because the Commonwealth did not seek to prove something the identifying witness (Shurtleff) had denied or contradicted, but delved into the matter only after the defense, for its tactical purposes, had gone into the subject, but not completely. For a discussion of the principle that whenever statements of a witness are placed in evidence, all that was said by the witness on the same subject may be admitted (the "rule of completeness"), see *Commonwealth* v. *Watson,* 377 Mass. 814, 823-834 (1979); Liacos, Massachusetts Evidence 443 (5th ed. 1981).

4. *Other matters.* (a) The prosecutor's comment in closing argument that the police had done a tough job well was not tantamount to vouching for the credibility of government witnesses. (b) The charge on reasonable doubt was faithful to *Commonwealth* v. *Webster,* 5 Cush. 295 (1850), and the addendum consistent with *Commonwealth* v. *Ewing,* 30 Mass. App. Ct. 285, 289-290 n.1 (1991). (c) Various weaknesses in the defense at the trial stage to which the defendant's appellate counsel now alludes are no

---

[3]Defense counsel was also laying a foundation for later cross-examination of the detective who presented photographic arrays to Shurtleff.

more than Monday morning quarterbacking. "Invariably the lawyer who refights a campaign on the written record finds ways to fight it better." *Commonwealth* v. *McGann*, 20 Mass. App. Ct. 59, 61 (1985).

*Judgment affirmed.*

*William A. Hahn* for the defendant.
*Elspeth B. Cypher*, Assistant District Attorney, for the Commonwealth.