ALAN PINSHAW *vs.* METROPOLITAN DISTRICT COMMISSION.

No. 90-P-1471.

Suffolk. February 14, 1992. - December 22, 1992.

Present: FINE, JACOBS, & LAURENCE, JJ.

*Massachusetts Tort Claims Act. Indemnity. Public Employment,* Indemnification of employee. *Metropolitan District Commission,* Police. *Police,* Commonwealth's liability. *Civil Rights,* Damages. *Agency,* Scope of authority or employment, Ratification. *Evidence,* Relevancy and materiality.

A plaintiff who was awarded damages and fees in a Federal civil rights action against a police officer of the Metropolitan District Commission (MDC) and who subsequently, as assignee of the officer's indemnification rights, sought unsuccessfully to recover this award in a Superior Court action against the MDC, was entitled to a new trial, where the jury in the Superior Court found, in response to a special verdict question, that the officer had not acted within the scope of his duties, and where the judge had not adequately instructed the jury on the issue of ratification, which was presented by evidence at trial indicating that the officer's superiors may have ratified his action. [734-737]

On retrial of a civil action, admission in evidence of redacted versions of two paragraphs of the plaintiff's complaint in a prior Federal action would be left to the broad discretion of the judge, along with the question whether the probative value of such evidence was outweighed by its potential prejudicial effect. [737-738]

CIVIL ACTION commenced in the Superior Court Department on February 15, 1984.

Following review by the Supreme Judicial Court, 402 Mass. 687 (1988), the case was tried before *J. Harold Flannery,* J., and a motion for a new trial was heard by him.

*Howard Friedman* for the plaintiff.

*Leila R. Kern* for the defendant.

JACOBS, J. Following the decision in *Pinshaw v. Metropolitan Dist. Commn.,* 402 Mass. 687 (1988), in which a divided court reversed a summary judgment for the defendant Met-

ropolitan District Commission (MDC), this case was tried in
the Superior Court. At the trial, the plaintiff, Alan Pinshaw,
acting under an assignment of rights to indemnification[1]
from Frederick Monk, an MDC police officer, sought recov-
ery of damages and fees previously awarded Pinshaw in a
civil rights suit he had filed against Monk in the United
States District Court. In the Federal suit, Pinshaw had al-
leged that Monk had initiated a false and retaliatory crimi-
nal action against him after he complained to Monk's superi-
ors of his "incivility" toward him.[2] Judgment that Pinshaw
take nothing was entered in the Superior Court after the jury
found, in response to a special verdict question, that Monk
had not acted within the scope of his official duties. In this
appeal, Pinshaw claims the judge erred when he. denied his
motion for a new trial. We agree.

Pinshaw's principal argument is that the jury was inade-
quately instructed on ratification, an issue discussed in the
prior decision, *Pinshaw* v. *Metropolitan Dist. Commn.*, *supra*
at 695-696, and raised by the evidence at trial. The only in-
struction which could be construed as touching on ratifica-
tion was:

---

[1]General Laws, c. 258, § 9A, inserted by St. 1982, c. 345, states in rele-
vant part: "The commonwealth shall indemnify members of . . . the metro-
politan district police . . . from all personal financial loss and expenses . . .
arising out of any claim, action, award, compromise, settlement or judg-
ment resulting from any alleged intentional tort or by reason of an alleged
act or failure to act which constitutes a violation of the civil rights of any
person under federal or state law; provided, however, that this section shall
apply only where such alleged intentional tort or alleged act or failure to
act occurred within the scope of the official duties of such police officer."

[2]On two occasions while Monk was directing traffic near Fenway Park
following a Red Sox game, Pinshaw found Monk's manner "threatening"
and inappropriate. Pinshaw telephoned the MDC to complain of Monk's
"incivility," and followed up with a letter to the officer's superior, Captain
Kenneth Elliott. Monk thereafter applied for a criminal complaint in the
Roxbury District Court against Pinshaw for violating MDC Rule 7, "by
refusing to comply with the lawful order of a police officer who was di-
recting traffic. . . ." At about the time of that application, Elliott's supervi-
sor, Deputy Superintendent John McDonough, notified Pinshaw by letter
that the matter would be investigated.

"Moreover, if you find that Monk's superiors knew that he had filed a false criminal complaint, and that they did nothing about it, you may consider that evidence on the question of whether they believed him to be within the scope of his official duties."

Upon completion of the judge's instructions, Pinshaw objected to the judge's "failure to give a full ratification or endorsement instruction as [requested]."[3]

It is a well-established principle that an employer is not only liable for torts committed by its servants acting within the scope of their employment but, "by ratification may become responsible for such acts when committed in excess of their authority." *White* v. *Apsley Rubber Co.*, 194 Mass. 97, 99 (1907), and cases cited. See Restatement (Second) of Agency § 218 comment a (1958). The court in *Pinshaw* indicated that ratification might be an issue in the case to be tried in the Superior Court. In its decision, it stated that "[t]he fact that Monk's superiors knew of the *retaliatory action* is *some* evidence they may have endorsed or ratified Monk's action . . ." (emphasis supplied). *Pinshaw* v. *Metropolitan Dist. Commn.*, *supra* at 695. The court thereby inti-

---

[3]The plaintiff's objection and timely submission of a requested instruction, in compliance with Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974), fully called to the judge's attention the alleged inaccuracy or incompleteness of the jury instruction, and called for an adequate jury charge on this distinct and controlling issue. See *Liakos* v. *Moreno*, 351 Mass. 90, 93-94 (1966); *Collins* v. *Baron*, 392 Mass. 565, 568 n.3 (1984), and cases cited; *Narkin* v. *Springfield*, 5 Mass. App. Ct. 489, 491 (1977); *Petras* v. *Storm*, 18 Mass. App. Ct. 330, 335 (1984).

The relevant portions of the requested instruction were:

"The fact that Officer Monk's superiors . . . knew [he] sought and then obtained a criminal complaint against . . . Pinshaw but did not discipline him for his conduct may be considered by you as evidence . . . that Monk's actions were . . . ratified . . . . Similarly the fact that Monk's superiors relied on the existence of this criminal complaint to suspend action on . . . Pinshaw's complaint against Monk is evidence that they . . . ratified Monk's conduct . . . .

"If you find that the [defendant] acting through [Monk's superiors] endorsed or ratified [his] conduct, then the [defendant] cannot prevail on its claim that Monk acted outside the scope of his employment because the [defendant] ratified Monk's conduct."

736       33 Mass. App. Ct. 733

Pinshaw v. Metropolitan District Commission.

mated that the issue of ratification was related to whether Monk's action might be encompassed within the statutory requirement that the alleged civil rights violation be found to be within the scope of his official duties in order to entitle Monk to indemnification. Note 1, *supra*. Thus, the law of the case was clearly established for trial. See *Boyd* v. *Taylor,* 207 Mass. 335, 336 (1911); *Hetherington & Sons* v. *William Firth Co.,* 212 Mass. 257, 260 (1912).

The evidence at the trial raised an issue of ratification principally through the testimony of Monk's superior, Captain Elliott, who told of initially receiving Pinshaw's complaint about Monk, learning of Monk's application for a criminal complaint against Pinshaw in the Roxbury District Court, suspending any further investigation, and advising Pinshaw that the incident would be settled in that forum. Elliott also testified that the investigation of Pinshaw's original complaint was not reopened, and that Monk was never disciplined, that he believed the matter had been resolved in the Roxbury District Court[4] and that he was unaware of any further difficulty until the Federal action was filed. Accordingly, an appropriate instruction on ratification was required.

The instruction in issue neither adequately informed the jury that ratification by Monk's superiors could transform an unauthorized act into statutorily indemnifiable conduct nor fully explored the issue of ratification. It also erroneously focused on the subjective belief of Monk's superiors as to his actions. The jury should have been instructed to address the issue of ratification if they found that Monk's motivation for bringing the criminal complaint precluded a determination that he acted within the scope of his official duties. In that event, the issue is whether ratification by Monk's superiors could be inferred from the circumstances. As indicated by the Supreme Judicial Court, knowledge of Monk's retaliatory

---

[4] After the District Court judge found Pinshaw guilty and imposed a ten dollar fine, Pinshaw successfully sought dismissal of the complaint in the Superior Court. He thereafter filed the civil rights action in Federal court. During the pendency of the Federal proceeding, Monk filed a bankruptcy petition and subsequently assigned to Pinshaw his claim to indemnification from the MDC.

action may be evidence of ratification. *Pinshaw* v. *Metropolitan Dist. Commn.*, *supra* at 695. See *Perkins* v. *Rich*, 11 Mass. App. Ct. 317, 322-323 (1981) (knowledge or imputed knowledge of what an investigation might disclose is necessary to establish ratification by a superior of unauthorized acts of agent). Compare *Smith* v. *Boston*, 413 Mass. 607, 617 (1992).

Among other factors which may be considered evidence of ratification on the part of a superior are a failure to investigate and discipline an employee, see *Pusateri* v. *E. F. Hutton & Co.*, 180 Cal. App. 3d 247, 253 (1986) (cited in *Pinshaw* v. *Metropolitan Dist. Commn.*, *supra* at 696), allowing an improper prosecution to proceed, see *Conklin* v. *Consolidated Ry.*, 196 Mass. 302, 308 (1907), and failure to disavow an employee's unauthorized action and to mitigate the harm caused once the facts are ascertained. See *Boice-Perrine Co.* v. *Kelley*, 243 Mass. 327, 330-331 (1923). Even when the evidence supporting such an inference is slender, "[t]he question of ratification should [be] submitted to the jury under appropriate instructions." *Id.* at 331.

An issue argued by Pinshaw which may arise on retrial involves the admission in evidence of redacted versions of two paragraphs of his complaint in the Federal action. To the extent that these pleadings contained more than formal allegations, they may be admissible as evidentiary admissions, even absent evidence that they were approved by Pinshaw. *Clarke* v. *Taylor*, 269 Mass. 335, 337 (1929). See Liacos, Massachusetts Evidence 280 (5th ed. 1981). The pleadings alleged that Monk knowingly filed a false complaint for the purpose of punishing Pinshaw for his complaint against Monk. They could be viewed as relevant in that they revealed a position inconsistent with one of Pinshaw's claims in the indemnification action to the effect that Monk's actions were within the ordinary scope of his authority. See *Mitchell* v. *Fruehauf Corp.*, 568 F.2d 1139, 1147 (5th Cir. 1978). As the evidence had some, albeit slight, probative value, its admission must be left to the broad discretion of the judge, see *DeJesus* v. *Yogel*, 404 Mass. 44, 47 (1989), along with the question of

whether that value was outweighed by its potential prejudicial effect. Liacos, Massachusetts Evidence 408-410 (5th ed. 1981). See *Vincent* v. *Louis Marx & Co.,* 874 F.2d 36, 41 (1st Cir. 1989).

We decline Pinshaw's invitation to review the judge's instructions as to the provision in G. L. c. 258, § 9A, which would prohibit indemnification if Monk "acted in a wilful, wanton, or malicious manner." The jury did not reach the special question which addressed that provision. Given our decision, any analysis of the possible prejudicial effect of the judge's instruction on the jury's response to the scope of duty question would involve us in unnecessary speculation.

Accordingly, the order denying the motion for new trial is vacated, the judgment is reversed, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*