KATHLEEN F. LIARIKOS *vs*. ELLIOTT P. MELLO.

Bristol. March 9, 1994. - September 20, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Evidence*, Relevancy and materiality. *Practice, Civil*, Instructions to jury.
   *Uniform Commercial Code*, Sale of goods, Rejection of goods, Revoca-
   tion of acceptance. *Sale*, Rejection of goods, Revocation of acceptance.

At the trial of a civil action, evidence that the defendant was a partner in
   a business enterprise in 1990 and 1991 was relevant, in conjunction
   with other evidence, to establish that the defendant had acted as a part-
   ner in 1988 (the time in issue) and the judge properly admitted it
   [672]; further, for purposes of a claim that the defendant had violated
   G. L. c. 93A, the judge properly concluded, on the evidence properly
   admitted, that a partnership existed [672].
The judge in a civil action alleging fraud and violation of an express war-
   ranty involving the sale of an automobile correctly instructed the jury
   that the plaintiff's continued use of the automobile could be consistent
   with her valid revocation of acceptance of the vehicle if special circum-
   stances exist and the plaintiff's use is reasonable. [672-675]
This court set forth the factors that a judge should address in instructing a
   jury on the issue whether a buyer's use of rejected goods is reasonable
   in the circumstances of the case so as not to invalidate the revocation of
   acceptance. [675]
In an action alleging fraud and violation of an express warranty in connec-
   tion with the sale of an automobile, the evidence warranted the jury's
   conclusion that the plaintiff's continued use of the vehicle after validly
   revoking her acceptance of it was reasonable in the circumstances and
   not inconsistent with her rejection of the goods. [675-676]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 4, 1990.

The case was tried before *William H. Carey*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Richard E. Burke, Jr.*, for the defendant.

*Walter P. Faria* for the plaintiff.

O'CONNOR, J. A Superior Court jury, by special verdict, found that the defendant, Elliott P. Mello, was a partner with Michael W. Costa in the business of Pine Grove Auto Sales when that enterprise sold a Jaguar motor vehicle to the plaintiff, Kathleen F. Liarikos. The jury also found that Costa or Mello violated an express warranty to the plaintiff with respect to the odometer reading on the Jaguar at the time of the sale, and that Costa or Mello deceived and committed a fraud on the plaintiff. In addition, the jury found that the plaintiff made an effective revocation of the acceptance of the Jaguar to Pine Grove Auto Sales after discovery of the odometer change, and they assessed damages in the sum of $31,150. A judgment for that sum plus interest was entered.

The trial also dealt with the plaintiff's claim under G. L. c. 93A, §§ 2 & 9 (1992 ed.). That claim was tried in accordance with the parties' agreement that the jury's verdict would be advisory in nature and the judge would reserve final judgment on that claim. In deciding the c. 93A claim, the judge adopted the jury's determination that a partnership existed between Mello and Michael Costa[1] and that they had committed an unfair or deceptive act in violation of c. 93A. The judge rejected the jury's finding that the partners had acted wilfully or knowingly. He also expressly found that Mello had not committed any of the unfair acts, but held him liable for Costa's acts as Costa's partner in the enterprise known as Pine Grove Auto Sales. A separate judgment on the c. 93A claim was entered limiting the plaintiff's recovery to her attorney's fees and costs and ordering the plaintiff to continue to make the automobile available to Mello for repossession by Mello pursuant to the plaintiff's rejection of the vehicle. The defendant appeals from both judgments.

---

[1]The judge found that Costa actually sold the automobile to Liarikos and committed the unfair and deceptive acts. He was a codefendant in the Superior Court. However, after he filed a suggestion of bankruptcy, the claims against him were dismissed.

Mello appealed to the Appeals Court, challenging the admission in evidence of financial statements made by him in 1990 and 1991, the judge's finding on the c. 93A claim that a partnership existed between Costa and Mello, and the judge's instruction to the jury that continued use of an automobile may be consistent with a valid revocation of acceptance if special circumstances exist. We transferred the case here on our own initiative. We conclude that the judge properly admitted the financial records, that the instruction on continued use was correct, and that the judge's finding that a partnership existed was warranted by the evidence presented at trial.

The dispute that led to the litigation arose from the plaintiff's, Kathleen F. Liarikos, purchase of a 1984 Jaguar XJS automobile from Pine Grove Auto Sales in 1988. The plaintiff dealt almost exclusively with Michael Costa in regard to the purchase, although she asserted that Mello had made representations regarding the vehicle's low mileage. After experiencing various mechanical problems with the automobile, the plaintiff discovered in 1990 that the vehicle's odometer had been turned back. She sent a c. 93A demand letter to Pine Grove Auto Sales to which neither Mello nor Costa responded. The plaintiff asserts, and the defendant appears to agree, that the demand also served as the plaintiff's revocation of acceptance of the vehicle. The plaintiff continued to use the vehicle after the revocation.

The judge found that Mello did not personally engage in any unfair or deceptive act or practice. Therefore, Mello's liability, if any, must be based on his status as a partner with Costa, in 1988, in the Pine Grove Auto Sales enterprise. In order to prove the existence of the 1988 partnership, the plaintiff introduced in evidence records consisting of financial statements that had been prepared by Mello in 1990 and 1991. In the financial statements, Mello listed the inventory of Pine Grove Auto Sales as a personal asset. He also listed a fifty percent interest in "Pine Grove Auto" in the "Business Ventures" schedule of the 1990 statement. Mello objected at trial to the introduction of those documents, arguing that,

because they were prepared in and for 1990 and 1991, they are not relevant to his status as a partner with Costa in 1988.

Proffered evidence is relevant if it "render[s] the desired inference more probable than it would be without the evidence." *Green* v. *Richmond*, 369 Mass. 47, 59 (1975). In this case, the financial statements, while not themselves sufficient to prove the existence of a partnership in 1988, are relevant when viewed in conjunction with the testimony of three witnesses that Mello had held himself out and acted as a partner in Pine Grove Auto Sales prior to and during 1988. Relevant evidence need not bear directly on the ultimate fact; it is sufficient if it constitutes a link in the chain of proof. *Commonwealth* v. *Durkin*, 257 Mass. 426, 428 (1926). "We accord the judge substantial discretion in deciding whether evidence is relevant." *Commonwealth* v. *Tobin*, 392 Mass. 604, 613 (1984).

Mello challenges the judge's finding that a partnership existed between Costa and himself for the purpose of the c. 93A ruling. He reasons that the jury's advisory opinion was reached in part due to their consideration of what he characterizes as erroneously admitted financial statements. He argues that because the judge's finding was derived from the jury's advisory opinion it is infected by the erroneous admission of the financial statements in evidence. Because we hold that the financial statements were properly admitted, Mello's argument lacks merit.

The final issue argued by Mello raises a question not previously addressed by this court. In instructing the jury, the judge said:

> "[T]he general rule of law is that a continued use after rejection does not permit this remedy of rescission or rejection unless there are some special circumstances that you as the jurors may consider for whatever considerations you want to give to them; whether or not there was any conduct by the plaintiff, in other words, incon-

sistent with her intent to reject it after she rejected it and if she did reject it."

Mello claims that this instruction was in error because continued use after revocation, if unexplained, constitutes an acceptance. Mello contends that only assurances of repair by the seller or an intent on the buyer's part to preserve the goods may explain continued use after revocation. After approximately one hour of deliberation, the jury asked the following question:

"In reference to Question No. 5 [which read 'did the plaintiff make an effective revocation of the acceptance of the Jaguar to Pine Grove Auto Sales after discovery of the odometer change'] if the demand letter has been presented to the defendant and no response has been made to the demand can the plaintiff continue to use the vehicle until some resolution has been made to the demand?"

In response to the question, the judge replied:

"Persons such as the plaintiff cannot continue to accept the vehicle and reject it at the same time. You cannot accept it and also reject.

"Consistent[2] use after rejection of a motor vehicle or after being offered back to a dealer may be construed as continued acceptance unless the jury finds that there have been some special circumstances by reason of its continued use not inconsistent with rejection, but she must hold it in her possession with reasonable care after there has been a valid rejection, assuming there has been, so as to permit its availability to the seller to get possession of it; and consistent use may or may not be

[2]There are two places in the quoted language where the transcript reads "consistent," yet "continued" seems to be the appropriate word in the context of the instruction. It is unclear if the judge misspoke or the transcription is faulty.

in conformity with that obligation, depending upon how the jury resolves the issue."

Mello objected again on the grounds that "special circumstances" are not an accepted explanation for continued use and that there was no evidence of "special circumstances" presented to the jury.

The judge's instruction and answer to the jury's question, although not as full as they might have been, were not erroneous. A buyer who has validly rejected goods or revoked acceptance has a duty to treat the goods in a manner not inconsistent with the seller's ownership. G. L. c. 106, §§ 2-602 (2) (*a*) & 2-608 (3) (1992 ed.). In interpreting identical provisions, a few courts have held that the continued use of an automobile after a valid revocation operates as a second or continuing acceptance, thereby invalidating the revocation. See, e.g., *Bryant* v. *Prenger*, 717 S.W.2d 242, 244 (Mo. Ct. App. 1986) ("appellants continued to use the automobile as their own and not in a manner compatible with the attempted rescission . . . [t]he effect was to nullify the prior revocation of acceptance"); *Wendt* v. *Beardmore Suburban Chevrolet, Inc.*, 219 Neb. 775, 780 (1985) ("Logically, then, the Code requires that Plaintiffs' continued use of the automobile after their attempted rejection invalidates the revocation of acceptance," quoting *Waltz* v. *Chevrolet Motor Div.*, 307 A.2d 815, 816 [Del. Super. Ct. 1973]). Other courts have held, however, that "[a] blanket rule prohibiting a revoking buyer from continuing to use the goods would contravene the code's rule of reasonableness and its underlying purpose of modernizing commercial transactions." *Johannsen* v. *Minnesota Valley Ford Tractor Co.*, 304 N.W.2d 654, 658 (Minn. 1981). In reaching this conclusion, these courts "emphasize the practical consideration that an individual who buys an automobile . . . may very well be unable, without extraordinary financial difficulty, to tender the automobile . . . and do without it until the litigation concerning it is complete." *Ex parte Stem*, 571 So. 2d 1112, 1114 (Ala. 1990). We find this reasoning persuasive.

The continued reasonable use of an automobile should not as a matter of law prevent the buyer from revoking acceptance. See *Ibrahim* v. *Ford Motor Co.,* 214 Cal. App. 3d 878, 897 (1989), and cases cited. What constitutes reasonable use is a question of fact for the jury which must be decided under the circumstances of each case. The reasonableness of continued use has been based on the existence of so called special circumstances. See *Wendt, supra* at 427-428. The judge in the instant case charged the jury using the special circumstances language. As demonstrated in the recitation of the judge's instruction above, the term "special circumstances" by itself does little to direct the jury's deliberations toward the determinations which will likely throw light on the reasonableness of the buyer's continued use. In the future, juries should be instructed that continued use, if reasonable, does not invalidate a revocation of acceptance. The jury should be further instructed that factors to consider on the issue of reasonable use are "the seller's instructions to the buyer after revocation of acceptance; the degree of economic and other hardship that the buyer would suffer if he discontinued using the defective goods; the reasonableness of the buyer's use after revocation as a method of mitigating damages; the degree of prejudice to the seller; and whether the seller acted in bad faith." *Johannsen, supra* at 658. See also *Ozark Kenworth, Inc.* v. *Neidecker,* 283 Ark. 196, 200-201 (1984).

In the present case, the jury would have been warranted in finding that the defendant ignored the plaintiff's request that he refund the purchase price and take back the automobile. Indeed, the evidence was not in conflict with respect to that point. In addition, the jury would have been warranted in finding, and again there was little controversy, that the plaintiff relied on her automobile to conduct her business and would have been harmed by lack of access to an automobile. Accordingly, while the judge's instruction was not optimal, it was sufficient in view of the evidence in this case, and the jury were warranted in finding that the plaintiff's continued use was reasonable. Mello's contention that continued use

may only be explained by reliance on assurances of repair by the seller or as an attempt to preserve the value of the defective goods is an overly restrictive interpretation of reasonable continued use.

*Judgment affirmed.*