LOUIS MATTEO & others[1] *vs.* ALAN R. LIVINGSTONE & another.[2]

No. 94-P-1512.

Franklin. March 28, 1996. - July 5, 1996.

Present: PERRETTA, KASS, & JACOBS, JJ.

*State Sanitary Code. Regulation. Negligence,* Porch railing, Duty to prevent harm. *Evidence,* Relevancy and materiality, Expert opinion, Consciousness of guilt, Photograph.

The judge at the trial of a negligence action correctly excluded as evidence portions of the State Sanitary Code proffered by the plaintiffs, where violation of the regulations, if any, was not relevant to the issue of negligence inasmuch as the risk of harm the plaintiffs suffered was not within the contemplation of the particular regulations [660-662]; moreover, the Sanitary Code was not applicable to the porch in question, which was not part of a dwelling. [662]

In a negligence action, plaintiffs did not demonstrate that the State Building Code was applicable to a building constructed or repaired before the effective date of the Code. [662]

At the trial of a negligence action the judge correctly excluded expert testimony to the effect that the condition of a certain porch was unsafe, where that was the ultimate issue to be decided by the jury. [662-663]

At the trial of a negligence action the judge properly excluded evidence that the alleged tortfeasor transferred his assets exhibiting consciousness of liability, where the judge could reasonably have concluded that the transfers were temporally remote in relation to the accident and the commencement of litigation and were for reasons not relevant to the cause of action [663-664]; and similarly the judge properly excluded two photographs proffered by the plaintiffs that were irrelevant [664-665].

The judge in a civil action correctly denied the plaintiffs' motion for a new trial. [665]

CIVIL ACTION commenced in the Superior Court Department on March 1, 1991.

The case was tried before *Richard F. Connon*, J.

[1]Anthony Matteo and Judith Matteo, the parents of Louis Matteo.
[2]Richard W. Ingersoll.

*Daniel J. Johnedis* for the plaintiffs.

*Jeffrey L. McCormick* for Richard W. Ingersoll.

*Peter E. Heppner* (*Stephen M.A. Woodworth* with him) for Alan R. Livingstone.

KASS, J. Louis Matteo, an avid bicyclist, rode off an entry porch to a general store in Northfield on his mountain bike, landed badly, fell, and sustained injuries that left him a quadriplegic. He and his parents brought an action against the proprietor of the general store and the owner of the building in which the store is located, alleging their negligence because a railing did not enclose the open south end of the porch. A jury returned a verdict finding neither defendant negligent. Of four points raised on appeal, the principal one is that the trial judge erred in excluding the admission of, and references to, provisions of State and industry building codes that required a protective railing on walking surfaces over thirty inches above the ground. We affirm.

Accidents that arose out of "bringing a bike up the stairs on the porch and then riding the bike off," the trial judge thought, were not risks within the contemplation of the safety codes. Those statutory provisions, the judge observed, pertained to "the types of risks that ordinarily would be contemplated by running a general store; customers coming to and from the store on foot, walking upstairs, walking downstairs." The judge was applying a familiar principle, given expression in *Perry* v. *Medeiros*, 369 Mass. 836, 841 (1976), that violation of a statute or regulation, while not conclusive of civil liability, constitutes evidence of negligence of the person who has violated the statute or regulation as to consequences that the statute or regulation *was intended to prevent.* See also *Guinan* v. *Famous Players-Lasky Corp.*, 267 Mass. 501, 516 (1929); *Roberts* v. *Southwick*, 415 Mass. 465, 477 (1993) (O'Connor, J., concurring).

In its architecture, the building in which the general store was located is evocative of rural main streets and, indeed, the building, constructed before the Civil War,[3] is on the main street of a rural community. It is a two-story structure from which there extends a porch that runs along the entire front of the building. Three masonry steps that also run the entire

---

[3]In 1879 there was a damaging fire in the building, requiring it to be substantially rebuilt.

front of the building lead to the porch. A final step takes a visitor to the porch, from which, roughly in the center of the building, there is an entrance to the store. At the north or right (viewed from the street) end, there is an entrance to two apartments on the second floor. Similar masonry steps serve that right end. At the south or left end, where there are no doors, there are no stairs. The drop to the ground varies with the slope of the land from thirty and one-half inches to twenty-five and one-half inches. The porch is a portico, i.e., columns support the roof over it and that roof is the support for the floor of an upstairs porch that serves the apartments. As one faces the building, there is a bench to the right of the entrance to the store and to the left, about a foot in from the end of the porch, there is a public telephone.

Louis Matteo, in April, 1988, was nineteen years old and a student at Greenfield Community College. He had a part-time job at the Bicycle Barn. From that shop, on April 12, 1988, Matteo rode his Schwinn High Sierra all-terrain mountain bike to the general store, known as Al's Convenience Variety Store. This was a trip Matteo made three or four times a week. He carried his bicycle up the stairs, leaned it against the wall of the building, and entered the store. When Matteo emerged, he put his purchases in the pockets of his bush jacket, put a leg over his bicycle, pushed off the left end of the porch and fell. Matteo knew there were no steps on that end of the porch. He was an experienced and skillful bicyclist, who had frequently negotiated straight drops without harm. Asked if he thought he could get hurt riding his bike over the left end of the porch, Matteo replied: "I thought maybe I'd fall over, bump or scrape, bruise my leg, arm, something like that." On this occasion, he fractured his third cervical vertebra.

1. *Exclusion of building code material.* (a) Prescinding, for the moment, from the question whether it applies to the defendant Ingersoll's building, the regulation which the plaintiffs seek particularly to invoke is 105 Code Mass. Regs. § 410.503(B) (1986), part of the State Sanitary Code. That regulation, so far as pertinent, provides:

> "The owner shall provide a wall or protective railing at least 36 inches high enclosing every porch, balcony, roof or other similar place which is more than 30 inches

above the ground and is used or intended for use by the occupants."

It does not ask exceptional insight to understand that when building regulations, such as the State Sanitary Code (which, by its terms,[4] pertains to housing), prescribe protective walls or rails, the consequence they are designed to prevent is that a person will fall off accidentally. Such regulations[5] do not have as their object preventing bicycle acrobatics. By application of the principle previously adverted to, that violation of a regulation is relevant to the question of negligence only if the risk that materialized was within the contemplation of the regulation, the trial judge correctly excluded the various codes that the plaintiff proffered. In addition to the cases previously cited, see *Sheridan* v. *United States*, 969 F.2d 72, 75 (4th Cir. 1992); Restatement (Second) of Torts § 286(c) and the comment on that subparagraph (1965).

This was no more than the invocation of the more general rule that the scope of a duty to do or not do something is limited to persons likely to be injured by the act or omission. *Palsgraf* v. *Long Island R.R. Co.*, 248 N.Y. 339, 344 (1928). Harper, James, and Gray, The Law of Torts § 20.5, at 138 (2d ed. 1986). Restatement (Second) of Torts § 281(c). When Judge Friendly observed in *Petition of Kinsman Transit Co.*, 338 F.2d 708, 723 (2d Cir. 1964), cert. denied, 380 U.S. 944 (1965), that everything is not foreseeable "that has in fact occurred," he expressed the duty of

---

[4]See 105 Code Mass. Regs. § 410.001 (1986), which describes the purpose of the regulations, and 105 Code Mass. Regs. § 410.010 (1986), which describes their scope.

[5]The plaintiffs offered three other building code provisions for the proposition that the open end of the porch should have had protective railing. One was 780 Code Mass. Regs. § 616.5.2(3) (1980), a subparagraph of the State Building Code, which required that: "Guards at least forty-two (42) inches in height shall be located along open-sided floor areas, mezzanines and landings." That subparagraph is part of a section pertaining to interior exitway stairways, and it requires impermissible wrenching from its context to apply it to a porch. The second and third were from the Building Officials & Code Administrators International, Inc.'s (BOCA) model code which contained a provision (§ 803.6) for guard rails on walking surfaces more than thirty inches above the floor or grade below and a provision (§ 827.1) that defined a guardrail system as one "located near the open side of elevated walking surfaces for the purpose of minimizing the possibility of accidental fall from the walking surface to the lower level." The relevance of any of those provisions to a platform porch of the sort involved in this case is highly doubtful.

courts to draw the outer circles of liability. See *Barnes* v. *Geiger*, 15 Mass. App. Ct. 365, 367-368 (1983).

In any event, the State Sanitary Code was not applicable to the porch. Under 105 Code Mass. Regs. § 410.010(A) (1986), the code applies to dwelling units used for the "purpose[] of living, sleeping, cooking or eating therein." The protective railing provision at 105 Code Mass. Regs. § 410.503(B) (1986), set out in full above, refers to porches intended to be used by "occupants," a term defined for purposes of the code at 105 Code Mass. Regs.§ 410.035 (1986) as a person living or sleeping in a dwelling. The south end of the ground floor platform from which the plaintiff made his ill-fated departure was not so occupied. To the extent that the ground porch served the apartments on the second floor, it did so on the north end, where there were steps and no railing was required. The suggestion of the plaintiffs that the ground floor platform constituted part of the residential quarters is unpersuasive.

The State Building Code (780 Code Mass. Regs. §§ 100 et seq. [1980]), through which the Sanitary Code might have been imported had the porch been appurtenant to the residential space in the building, does not apply to buildings that existed prior to its effective date. 780 Code Mass. Regs. § 101.1. That effective date was January 1, 1975, St. 1972, c. 802, § 77, almost a century after the building had last been reconstructed. There was no showing by the plaintiffs of alterations in the structure which would have invoked the provisions of 780 Code Mass. Regs. § 2200.0 (1980), relating to repairs and alterations of existing buildings. To the extent that the State Building Code at 780 Code Mass. Regs. § 104 (1980) requires that buildings, including preexisting ones, be maintained in a safe and sanitary condition, without regard to specific requirements of the code, the plaintiffs received the benefit, such as it was, of that provision. The judge in his charge to the jury drew their attention to § 104 and what it required.

2. *Exclusion of expert testimony that porch was unsafe without a railing.* Norton Remmer, a consulting engineer, was offered by the plaintiffs as an expert on building safety. The trial judge permitted him to testify that in his opinion there should have been a railing on the south end of the porch to keep people from stepping off accidentally. The judge did not permit Remmer to testify that the absence of a railing violated

a statute, a ruling that was consistent with the judge's earlier determination that the various building codes the plaintiffs had sought to introduce were either not applicable or not relevant. Nor did the judge permit Remmer to testify that the porch, as built and maintained, was unsafe. The correctness of the first exclusion we have already discussed.

The second exclusion accorded with the general principle that experts should not speak to the ultimate issue in a case. See *DeCanio* v. *School Comm. of Boston*, 358 Mass. 116, 125-126 (1970), cert. denied sub nom. *Fenton* v. *School Comm. of Boston*, 401 U.S. 929 (1971). Although the orthodox rule has sustained considerable erosion, and opinion evidence may now come much closer to the ultimate issue if it will aid the jury, experts are still foreclosed from expressing an opinion on commonplace conclusions that juries may reach without expert assistance. See *Commonwealth* v. *LaCorte*, 373 Mass. 700, 705 (1977); *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982); *Commonwealth* v. *Dockham*, 405 Mass. 618, 628-630 (1989); *Commonwealth* v. *Almeida*, 34 Mass. App. Ct. 901, 901-903 (1993); Liacos, Massachusetts Evidence § 7.3 (6th ed. 1994). So here, it was appropriate for the expert to testify about how, in his opinion, a porch of this sort ought to be built and where there should be railings, but what constituted a safe porch was for the jury to find based on the evidence received about what were the architectural characteristics of a safe porch. See *Robbins* v. *Athol Gas & Elec. Co.*, 236 Mass. 387, 391 (1920) (expert prevented from testifying whether lack of a fence around a transformer caused that "whole thing [to be] safe or unsafe").[6] Compare *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 884 (1978).

3. *Other matters.* (a) Five years after the accident and two years after the filing of the plaintiffs' action, Richard W. Ingersoll, the owner of the building, conveyed that property and three others that he owned to his wife for nominal consideration. The plaintiffs sought to introduce those transfers as evidence of consciousness of liability. See *Labrie* v. *Midwood*,

---

[6]Although the judge, in response to a motion in limine, had declared off limits an expression of opinion by Remmer as to whether the porch was safe, the expert blurted his opinion out while on direct examination. There were squawks of objection, that were sustained, and motions to strike, that were allowed, but the jury had heard Remmer say that he thought the porch was not safe.

273 Mass. 578, 580 (1931) (withdrawal of savings accounts within thirty days of police raid on defendant's house, a raid that laid the ground for a tort action by a cuckolded husband); *Credit Service Corp.* v. *Barker*, 308 Mass. 476, 481 (1941) (transfer of assets in face of action on a note). It may fairly be questioned whether concern about potential liability in an uncertain world has any probative value bearing on the question of negligence. The issue for the jury to consider was whether, in relation to a duty of care owed the plaintiff Louis Matteo, the defendant Ingersoll was required to maintain a railing on the south end of the porch of his premises, not what he thought about his exposure after the accident occurred. But see *Banfield* v. *Whipple*, 10 Allen 27, 31 (1865) (assignment by the defendants of all their property the day after they drove the plaintiff's horse so hard that it died was "some evidence that the defendants were conscious of liability and endeavored to escape from it"). Here, the transfers occurred not within days of the accident or assertion of a claim, as is characteristic of the consciousness of liability cases, but after Ingersoll had undergone coronary artery bypass surgery. His wife, the transferee, was in the real estate business, in apparent good health, and able to manage the properties. The couple had previously owned the real estate in question as tenants by the entirety. In excluding evidence of the transfer, the judge could reasonably have concluded that the transfers were temporally remote in relation to the accident and the commencement of litigation, and that admission of the evidence would send the trial down a sidetrack, involving evidence about Ingersoll's medical condition and business purposes for the real estate transfers. Against these difficulties, the judge could reasonably determine that the relevance of the transfers was highly attenuated and more likely to mislead the jury than to inform them. A trial judge has substantial discretion in deciding whether evidence is relevant, *Liarikos* v. *Mello*, 418 Mass. 669, 672 (1994), and the judge in this case did not abuse that discretion.

(b) Similarly, the trial judge did not abuse his discretion in excluding two photographs of a building on Conway Street in Greenfield that Ingersoll owned. Those pictures showed a building with a platform style porch (higher off the ground) that was enclosed by a railing, except where steps led to it. The inference plaintiffs' counsel desired the jury to draw from

the photographs was that Ingersoll knew it was good practice to have a porch enclosed by a railing. After the photographs were offered and excluded (as they could have been for lack of relevance), Ingersoll testified that he had not installed the railing on the Greenfield property, that it was there when he bought the property, and that putting a railing at the south end of the property at 60 Main Street in Northfield as a safety measure had never entered his mind. The jurors, thus, heard anything that the photographs could have communicated. There was no error.

(c) The plaintiffs appeal from the trial judge's denial of their motion for a new trial. The issues raised in connection with that motion are essentially those raised in connection with this appeal, and the motion, therefore, was rightly denied.

*Judgment affirmed.*