PATRICIA M. CARNEY, coadministrator,[1] *vs.* MICHAEL R. TRANFAGLIA.

No. 02-P-52.

Essex. November 19, 2002. - March 26, 2003.

Present: LAURENCE, KASS, & RAPOZA, JJ.

*Medical Malpractice,* Expert opinion. *Negligence,* Medical malpractice, Psychiatrist, Causation. *Psychologist. Doctor,* Controlled substances. *Controlled Substances. Evidence,* Expert opinion. *Practice, Civil,* Instructions to jury, New trial.

In a medical malpractice action, the judge properly exercised her discretion in refusing to admit in evidence testimony from the plaintiff's expert on whether the defendant's treatment contributed to the death of his patient, where the causal link was one that the jury could infer from the evidence already received without the need of an expert. [666-667]

In a medical malpractice action, the judge did not err in instructing the jury that if they should find that the defendant's patient consciously decided to end her own life, then the plaintiff had not met the burden of proof on the issue of causation, where, despite the fact that a motion in limine had been granted to exclude any reference to the patient's committing suicide, there had been repeated references to suicide throughout the trial, and the issue of suicide as an independent intervening cause between an anterior act of negligence and death was therefore squarely before the jury. [667-670]

CIVIL ACTION commenced in the Superior Court Department on October 11, 1996.

The case was tried before *Leila R. Kern,* J., and a motion for a new trial was heard by her.

*Edward Berkin* for the plaintiff.

*Peter C. Knight (Tory A. Weigand* with him) for the defendant.

KASS, J. In response to special questions posed in a medical malpractice case, the jury answered that the negligence of the defendant, a psychiatrist, was not a substantial contributing factor in causing the premature death of his patient, Patricia Car-

---

[1] Of the estate of Patricia Carney Poretta.

ney Poretta.[2] Based on that verdict, a judgment was entered for the defendant.

Poretta had died of chloral hydrate intoxication. The theory of the plaintiff's case was that the psychiatrist, Dr. Tranfaglia, had been negligent in prescribing chloral hydrate as medication for sleep disorder to Poretta, who had struggled for years with substance abuse, anxiety, depression, and panic attack. In the hands of such a patient, the plaintiff contended, a supply of chloral hydrate was like a hand grenade on which Poretta, predictably, would pull the pin, either by accident or intentionally.

On appeal, the plaintiff claims error in (1) the exclusion of expert testimony about causation; (2) a portion of the jury instructions about what the jury might conclude as to causation if they found that Poretta had decided to end her own life; and (3) the denial of a motion for a new trial.

*Facts.* Taking the evidence in the light most favorable to the plaintiff, we summarize salient facts that the jury could have found. Poretta first came into the care of Dr. Tranfaglia on November 17, 1992, after an emergency admission to the Anna Jaques Hospital "for evaluation of depression with suicidal ideation."

Then twenty-seven years of age, Poretta's life had long been troubled. At age fourteen she developed serious psoriasis, a disfiguring and itchy ailment of the skin, all over her body. In her teenage years she made a suicidal gesture and had "significant substance abuse problems." There was a medical record notation that her mother was an alcoholic. As a child, Poretta was sexually abused. Her parents divorced. After Poretta's fiancé left her in 1985, she went to California to be with her sister. While Poretta was in California, her sister was shot in the face by a boyfriend. Poretta had a relationship with a man in California that ultimately broke up. She returned to Mas-

---

[2]The first special question asked: "Was the defendant, Michael Tranfaglia, M.D., negligent in his care and treatment of Patricia Carney Poretta?" The jury answered, "Yes." The second special question, to which the jury answered "No," was: "Was the negligence of the defendant, Michael R. Tranfaglia, M.D., a substantial contributing factor in causing death prematurely to Patricia Carney Poretta?"

sachusetts, nine months pregnant. The son born to her was, at the age of two, diagnosed as retarded and suffering from a form of autism. Poretta married James Poretta during the summer before her death. Her relationship with him had been on and off and not without volatility. Police on July 1, 1993, responded to a call because the couple were fighting and knives had come into play. During the period from November 17, 1992, until her death on October 31, 1993, Poretta's mother successfully took legal steps to take custody of Poretta's child; i.e., mother and daughter were locked in legal combat about a profoundly personal issue. Poretta was sexually assaulted by a neighbor. Not long before her November 17, 1992, admission at Anna Jaques Hospital, she had suffered a miscarriage.

Before seeing Dr. Tranfaglia, Poretta had seen many doctors. She received medication for depression, anxiety, pain, and sleep difficulty. The medications included Percocet, Serax, Xanax, Zoloft, Paxil, Klonopin, Ambien, Dalmane, and chloral hydrate. Poretta abused drugs, and that proclivity was known to Dr. Tranfaglia. During the period following her admission to Anna Jaques Hospital on November 17, 1992, there were multiple admissions at a variety of institutions related to excessive use of her medications. The sleeping medication that she said worked for her was chloral hydrate, and Dr. Tranfaglia gave her prescriptions which allowed her to accumulate a large supply. Chloral hydrate is dangerous because the difference between a prescribed dose and a lethal dose is small.

2. *Exclusion of expert testimony on causation.* Counsel for the plaintiff made several attempts to have his expert give an opinion "whether or not Dr. Tranfaglia's treatment contributed to [Poretta's] death." It was the plaintiff's burden, counsel argued, to establish that the defendant's negligence was the proximate cause of the plaintiff's harm — in this case, Poretta's death. *Harlow* v. *Chin*, 405 Mass. 697, 702 (1989). Generally, the causal link is forged by expert testimony. *Ibid.* Specialized knowledge may be needed to make the link, for example, between a severed nerve and incontinence, a subject about which a jury of lay people could not be expected to have a store of reliable information. When the causal link is one that may be inferred from the evidence already received, the finder of fact

does not need help from an expert. See *Matteo* v. *Livingstone*, 40 Mass. App. Ct. 658, 663 (1996); *Puopolo* v. *Honda Motor Co.*, 41 Mass. App. Ct. 96, 98-99 (1996). Here, the plaintiff's expert had been allowed to testify copiously that chloral hydrate was a dangerous drug in the hands of an addictive personality, that Poretta had been an addictive personality, that abuse by her of chloral hydrate was predictable, that it happened, and that she died. It was hardly necessary or helpful to the jury to have the expert witness add a formulaic phrase such as "the negligent treatment caused the patient's death." See *Matteo* v. *Livingstone*, *supra* at 663. The judge's ruling was correct, as well as within the area of the broad discretion conferred on trial judges as to the admission of expert testimony. See *Commonwealth* v. *Woods*, 419 Mass. 366, 374-375 (1995).

3. *Jury instruction.* In the course of her charge to the jury, the trial judge instructed as follows:

> "If you find that Patricia Carney Poretta consciously decided to end her own life and that she believed that ingesting the medications [in] the quantities she took was likely to cause her death, then you may find that plaintiff has not met the burden of proof on that issue of causation."

Before closing arguments and charge, the judge discussed this paragraph in the instructions with counsel. The focus of the objection made by plaintiff's counsel, before and after the judge delivered her charge, was less on its substance but that the paragraph was objectionable because it introduced into the case, at the eleventh hour, a subject that was to have been out of the case, namely, whether Poretta had committed suicide.

The plaintiff's view that suicide was off limits was based on a pretrial motion in limine, made by the defense, "to exclude any reference in the medical records or by any other evidence that . . . Patricia Carney Poretta committed suicide . . . ." At trial and on appeal, the defense argued that the sole object of the motion in limine was exclusion of a reference to suicide as the manner of death in the autopsy report of the office of the chief medical examiner at the University of Massachusetts in Worcester. That argument is disingenuous. The motion, which, with the agreement of the parties, a judge other than the trial

judge had allowed, had a broader reach, namely reference to suicide "by any other evidence."

As the evidence developed at trial, however, there were repeated references to suicide and questions directed at whether Dr. Tranfaglia, exercising the degree of care and skill of the average qualified physician practicing psychiatry, taking into account the advances in the profession, should have entrusted Poretta with quantities of chloral hydrate pills that he might have anticipated she would use to end her life. As to the standard of care, see *Brune* v. *Belinkoff*, 354 Mass. 102, 109 (1968); *Stepakoff* v. *Kantar*, 393 Mass. 836, 840-841 (1985). During his cross-examination, the plaintiff's expert read into the record a hospital discharge summary referring to suicidal ideation. There was evidence that in December, 1992, Poretta had been admitted to Salem Hospital for treatment of a self-inflicted laceration of her left wrist with a knife. On December 10, 1992, Poretta again turned up at Anna Jaques Hospital with a chief complaint of "fear of harming herself at home." As part of the plaintiff's case, the jury were shown a video of a deposition of Ralph Epstein, M.D., who was on duty at the emergency room of Union Hospital in Lynn on May 31, 1993, when Poretta had been brought in. At the request of plaintiff's counsel, Dr. Epstein read from his contemporaneous notes, "Patient claims no one cares, wants to see God, wants to die."

During the defendant's case, the defense expert testified on direct examination that "[t]here was not a basis to be concerned that this was a woman at risk of suicide during the period of time that we're talking about." Defense counsel drew out some reinforcement of that opinion. During his cross-examination of the defense expert, plaintiff's counsel put the following questions:

> "And isn't it true, doctor, that you have seen in your review of stacks of pages in here numerous references by other medical care providers of their concern about Patricia Carney [Poretta] posing a suicide risk?"

> . . .

> "And isn't it true that those concerns about her possibly being suicidal included the final year of her life?"

. . .

"And isn't it true though that some of those concerns about a suicide risk that were reported in the other medical records occurred during the period of time that Dr. Tranfaglia was caring for Ms. Carney [Poretta]?"

. . .

"And you testified that you didn't see anything — your opinion was that there was nothing in the record that indicated that Patricia Carney [Poretta] would be at an increased risk for taking a deliberate overdose?"

Concerning an appointment with Poretta on October 28, 1993, three days before her death, defense counsel asked Dr. Tranfaglia, "Doctor, as of that last time, did you feel that she was at an increased risk of suicide?" He, with some elaboration, answered, "No."

Evidence of suicidal ideation and a possible attempt repeatedly percolated into the trial. Whether Dr. Tranfaglia adequately assessed the danger that Poretta might take her life was a recurrent minor theme in the evidence, subsidiary to the major theme that Dr. Tranfaglia had not adequately assessed the risk of overuse of chloral hydrate by Poretta because she was an addictive personality. Now it was the turn of plaintiff's counsel to take a disingenuous stance when he pretended shock that suicide should be mentioned in the jury instructions as a possible explanation for Poretta's chloral hydrate intoxication.

For the proposition that suicide may be viewed as an independent intervening cause between an anterior act of negligence and death there is authority. See *Daniels* v. *New York, N.H. & H.R.R.*, 183 Mass. 393, 398-399 (1903); *Freyermuth* v. *Lufty*, 376 Mass. 612, 618-620 & n.6 (1978). Compare *Slaven* v. *Salem*, 386 Mass. 885, 886-889 (1982); Restatement (Second) of Torts §§ 433, 435, 441, 442, 448, 449, 455 (1965). As an abstract statement of law, the judge was on sound ground concerning what she told the jury about how a finding that Poretta had deliberately taken her life might bear on the jury's deciding whether any negligence by the defendant had caused Poretta's death. The shortcoming of the instruction is what it

did not say. There was no elaboration that the jury might find, alternatively, that suicide was a foreseeable consequence, and that Dr. Tranfaglia, in treating his patient, had taken insufficient steps to ration her chloral hydrate so that she would not intentionally overdose.

The plaintiff, however, requested no amplification along those lines. On appeal, the plaintiff's claim of error is pitched solely on the basis that the judge unfairly introduced the possibility of suicide into the case at a late stage. In those circumstances, we do not make the deficiency in the instructions, on which we have remarked, the occasion for reversing the judgment. See and compare *Pinshaw* v. *Metropolitan Dist. Commn.*, 33 Mass. App. Ct. 733, 735 n.3 (1992). We are satisfied that, in any event, as the case was presented, the possibility that Dr. Tranfaglia had let his patient have pills of chloral hydrate in a quantity from which she could and might overdose was squarely before the jury and the judge's instruction did not confuse the question.

4. *Denial of motion for a new trial.* The plaintiff's motion for a new trial was based on the same grounds that the plaintiff has urged for reversing the judgment. On the view we have taken of those grounds, there was neither error nor evidence of misunderstanding by the jury. The trial judge was, therefore, right to deny the motion for a new trial.

*Judgment affirmed.*

*Order denying motion
for new trial affirmed.*