Vincent M. Vallone *vs.* John C. Donna & others.[1]

No. 98-P-1299.

Berkshire. March 8, 2000. - June 6, 2000.

Present: Porada, Dreben, & Duffly, JJ.

*Release. Contract,* Release from liability. *State Building Code. Waiver. Public Policy.*

Any duty of the owners of an ice skating rink, arising under the State Building Code and regulations promulgated thereunder, to maintain the facility in a safe condition did not give rise to liability for alleged negligent maintenance of the ice surface or failure to warn of the alleged defective condition, and a valid release of liability for ordinary negligence signed by a plaintiff who had been injured on the ice was not void as against public policy. [331-333]

Civil action commenced in the Superior Court Department on October 8, 1997.

The case was heard by *C. Brian McDonald,* J., on a motion for summary judgment.

The case was submitted on briefs.

*William J. Doyle, Jr.,* for the plaintiff.

*Paul M. Vrabel & James R. Loughman* for the defendants.

Porada, J. The plaintiff broke his leg on January 5, 1997, while skating at an ice skating rink owned by the Boys' and Girls' Club of Pittsfield, Inc. (club). He then filed a complaint in the Superior Court against the defendants as officers and employees of the club[2] to recover for his injuries, claiming that the defendants' negligent maintenance of the ice surface and failure to warn him of its defective condition resulted in his injuries. The defendants filed a motion for summary judgment on the ground that a release executed by the plaintiff barred this

---

[1]Craig R. Crosier and Marty Martin.

[2]The club was not named as a defendant.

action.[3] A Superior Court judge ruled that the release was valid
and entered judgment for the defendants from which the plaintiff
has appealed. We affirm.

"As a general proposition, releases of liability for ordinary
negligence are valid." *Gonsalves* v. *Commonwealth,* 27 Mass.
App. Ct. 606, 608 n.2 (1989). See *Cormier* v. *Central Mass.
Chapter of the Natl. Safety Council,* 416 Mass. 286, 288 (1993).
However, a release may not shield a defendant from responsibil-
ity for violation of a statutory duty. *Henry* v. *Mansfield Beauty
Academy, Inc.,* 353 Mass. 507, 511 (1968). *Gonsalves* v. *Com-
monwealth, supra.* In this case, the plaintiff argues that the
release does not bar his action because the defendants had a
statutory duty under the State Building Code (code) to maintain
the ice skating rink in a safe condition, 780 Code Mass. Regs.
§ 104.1 (1990), and the release is void as against public policy.

Under G. L. c. 143, § 3A, the State Building Code is applic-
able and enforceable in every municipality in Massachusetts.
Under its provisions, an "owner" shall be responsible for
maintaining all "buildings" and "structures" in a "safe and
sanitary condition." 780 Code Mass. Regs. §§ 104.1, 104.2
(1990). An owner is defined as "[e]very person[4] who alone or
jointly or severally with others (a) has legal title to any building
or structure; or (b) has care, charge, or control of any building
or structure in any capacity including but not limited to agent
. . . of the estate of the holder of legal title . . . ." 780 Code

---

[3]The release reads as follows:

"I and my parents and/or guardian assume all risk of injury to
person or property resulting from, caused by, or connected with, any
and all activities of the Pittsfield Parks Speed Skating Club from
October 1996 through April 1997.

"I hereby, for myself, heirs, executors, and administrators, waive
and release any and all rights and claims for damages I may have
against the City of Pittsfield, Massachusetts; . . . the Department of
Parks and Recreation of the City of Pittsfield; the Pittsfield Parks Speed
Skating Club; the Pittsfield Boys' and Girls' Club; Vietnam Veterans
Memorial Skating Rink or their agents, representatives, successors, or
assigns and for all injuries suffered by me during the duration of the
above mentioned activities."

[4]A corporation is included in the definition of person. 780 Code Mass.
Regs. § 201.0 (1990).

Mass. Regs. § 201.0 (1990). In this case, there is no dispute that the rink was owned and under the control of the club and that the defendant Donna was its president; the defendant Crosier, its executive director; and the defendant Martin,[5] its employee. Because of their respective capacities in the club and the breadth of the code's definition of "owner," it would appear that each of the defendants arguably qualifies as an "owner" of the rink under the code.

We also assume, without deciding, that an ice skating rink meets the definition of a building or structure under the code.[6] That said, however, we do not believe that the regulation applies to the circumstances of this case. The intent of the code is to "insure public safety, health and welfare insofar as they are affected by building construction through structural strength, adequate egress facilities, sanitary conditions, equipment, light and ventilation and fire safety . . . ." 780 Code Mass. Regs. § 100.4 (1990). In this case, the plaintiff claims that his injury was due to a soft spot in the ice surface which we view as unrelated to the structural components of the rink and outside the scope of the code's enumerated objectives. Consequently, the defendants are not precluded from relying upon the waiver to shield them from liability, for the waiver does not "do violence to the public policy underlying the [code's] enactment." *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 378 (1990), quoting from *Spence* v. *Reeder*, 382 Mass. 398, 413 (1981). See *Matteo* v. *Livingstone*, 40 Mass. App. Ct. 658, 661 (1996) ("violation of a [building code] regulation is

---

[5] The plaintiff alleged that Martin was the manager of the skating rink, while the defendants admitted that he was simply an employee.

[6] Although the parties have not described the ice skating rink, the defendants in this case do not contest that the ice skating rink is a building or structure. A building is defined under the code as "[a] structure enclosed within exterior walls or firewalls, built, erected and framed of a combination of any materials, whether portable or fixed, having a roof, to form a structure for the shelter of persons, animals or property. For the purpose of this definition, 'roof' shall include an awning or similar covering, whether or not permanent in nature. The word 'building' shall be construed where the context requires as though followed by the words 'or part or parts thereof.' " 780 Code Mass. Regs. § 201.0 (1990). A structure is defined under the code as "[a] combination of materials assembled at a fixed location to give support or shelter, such as a building, framework, retaining wall, tent, reviewing stand, platform, bin, . . . sign, flagpole, recreational tramway, mast for radio antenna, or the like. The word 'structure' shall be construed, where the context requires, as though followed by the words, 'or part or parts thereof.' " *Ibid.*

relevant to the question of negligence only if the risk that materialized was within the contemplation of the regulation").

We also reject the plaintiff's argument that the waiver is per se against public policy. We have repeatedly recognized that, at least in the case of ordinary negligence, the "allocation [of] risk by agreement is not contrary to public policy." *Cormier* v. *Central Mass. Chapter of the Natl. Safety Council*, 416 Mass. at 289 & n.1. *Zavras* v. *Capeway Rovers Motorcycle Club, Inc.*, 44 Mass. App. Ct. 17, 18 (1997).

*Judgment affirmed.*